The next case is number 21-1650, Denise Duval v. United States Department of Veterans Affairs. At this time, would Attorney Smith please come to the podium and introduce himself on the record to begin? May it please the Court. My name is Clint Smith, Traver Clinton Smith, Jr., and I represent, obviously, the appellant in this case, Denise Duval. May I please reserve one minute for rebuttal? Yes, you may. Thank you, Your Honor. This is a medical malpractice case, obviously, in which it is alleged that the patient, the father of the appellant, was caused to suffer a massive blood loss, causing multi-organ failure, leg amputation, long hospitalization, and ultimately never getting really out of health care, a very painful death. And it is a case in which it is alleged that the defense completely and deliberately violated the disclosure provisions of Rule 26. Rule 26 is a rule. It is not a validity. I'd like to make three points. The first point is that if you were to affirm this verdict, that would dilute, indeed it would demote, Rule 26 disclosure provisions to becoming no more than a validity, a mere desire. It would no longer be a rule. The second point is that affirming a verdict would provide trial judges, affirming this verdict would provide trial judges with a roadmap for a bulletproof method of protecting their findings of fact and rulings of law from being overturned when they have failed to enforce the disclosure provisions of Rule 26. All they would have to do is say, it wouldn't have made a difference to me. The third point harkens to the first. And that point is that a rule is a rule is a rule. On trial day five of this case, despite the unequivocal and unconditional admission testimony. It wouldn't have made a difference to me is just another way of saying that there's an alternative basis to decide the case. And the district courts say that all the time. I understand. But you're saying we should ignore the alternative basis? No, I'm not saying you should ignore the alternative basis. You should take them all into consideration. You should not eliminate the alternative basis. But if the alternative basis is dispositive, we don't usually deal with the nondispositive argument. If we have a dispositive argument before us, that's the one we tend to focus on. The trial judge would, if the trial judge ignores the rule, the rule, the disclosure rule, and says that I'm going to deny the motion to strike the brand new testimony on day five of the trial, and then says I did that because I don't think it would have made a difference to me. That's not necessarily dispositive. That's saying he doesn't think it would have made a difference because he has no idea what would have happened in cross-examination of the witness without the disclosure coming forward. So what we're saying is that the rule requires a complete and thorough disclosure in the written disclosure form of all facts and opinions and bases for those facts and opinions that the expert is going to offer at trial. In this case, that absolutely was not done. There was no, nothing relating to what you may have read as the migration theory in this case, referred to in the disclosure letter. That came as a complete and total surprise. It wasn't total. They had, didn't the letter say that the fact that the device was found in the rectus muscle doesn't mean that it was negligent? That's all it says. That's all they said. So they did say something. But it didn't provide further reasoning or analysis to back that up. None whatsoever.  So let's assume, just for purposes of argument for a moment, let's assume that was a violation of the written disclosure rule regarding expert testimony. That's step one you need to establish. Step two, then, is I think you need to establish that it wasn't harmless, that it caused you some prejudice. Yes, because it would be obvious that if it had been disclosed in advance, I would, as a trial counsel, would have been able to prepare my expert witness to rebut any such testimony. And I had no opportunity to do that. But you made no proffer of any additional testimony you would have offered, nor did you ask to present any additional testimony on the subject. I had no ability to. I had no expert at that time, Your Honor. None. Gone. It was over. But presumably he had a phone. He was gone. I didn't know how to reach him. I believe he was on vacation. But that's not in the record. But he was gone. It was a fifth day, second-to-last day of trial when this brand-new theory of the case came out that the suture, a piece of suture material, could leave where it was appropriately placed, according to the expert witness, and walk across the body. But thereafter, you made complaints about that on the day that it happened, during a break. Yes, and I moved to strike. And then you later filed suggested findings of fact and conclusions of law, in which you raised this issue again with the judge. Yes. Well, why in that? Usually we require people to make some proffer of the evidence that they would have been permitted had they not been blindsided. And I don't see any proffer at all, even in that, which you presumably had time to get your expert on the phone to see what he would have said. Well, there was – it's simple enough. A suture, a piece of inner suture material, doesn't get up from the correct location, as the expert said it was placed, and walk across to the top of a muscle. And that in the face of an admission by the doctor that they placed it in the wrong place to begin with. Well, but there was testimony that they fail in like three or seven percent of the cases. So why couldn't it fail and then migrate? Because they said – because the defense said it did not fail. They said they put it in the wrong place. That's what they said. They testified that they committed malpractice. They said we put it in the wrong place. Well, if they said that, then who cares what the testimony was about migrating? Because if you've got them admitting that they put it in the rectus muscle, you win. Obviously, the judge didn't buy your testimony that they put it there. Of the eyewitness who put it there. He apparently didn't think of it. He didn't mention it in his opinion. But what we are saying is that at the moment when they disclosed this brand-new testimony, it was in violation of the rule, and there should be an appropriate sanction. And the appropriate sanction is under Rule 37, that it should have been excluded. It speaks for itself. It's an absolutely undisclosed opinion that was given. So are you saying you don't need to show prejudice? No, you do need to show prejudice. Okay. I mean, because you obviously have a witness testifying against you in a manner that he had not disclosed he would. You are obviously prejudiced when somebody brings up a brand-new theory of the case when he was required at an earlier time to disclose it. And if it's on the fifth and also second to last day of trial, there is virtually no time to act. And it was also, and bad on me, it was also slightly disclosed in the opening statement, and it was also slightly disclosed in cross-examination of the plaintiff's expert when counsel said, couldn't the suture get up and move or something to that effect? Well, that wasn't a disclosure. The rule requires a written disclosure. So it sounds like your expert was asked about the theory of whether it could migrate and address that question. Yeah, but he was asked, and he said that's ridiculous. But he wasn't told, and he wasn't prepared for it. He had no opportunity to do the research to say, are any of the failures, not failures, are any of the known instances when the device did not work, meaning the suture did not work, are any of those dealing with migration of a suture? So when the other expert indicated that the location of the suture did not imply negligence, what did that mean to your expert? That meant to our expert that the man was talking through his nose, because the first expert, the defense expert, wasn't even a specialist in this field. But there was no probing of what that expert could have meant by that? Which expert are you talking about, please? The hospital's expert. Could you repeat the question in terms of the hospital? When the hospital's expert says that the location of the suture does not imply negligence, there was no further probing of what the expert meant by that? There was, and it was, you know, there was no basis for his opinion. His opinion came out in the probing that it moved. And, you know, what do you do when you hear on the second to last day of trial, it moved, and your expert's on vacation? You don't. You have no recourse. You have no ability to come back at him. Do you dare ask him even more? Do you dare ask him? Maybe he'll say it flew, but you don't know. You've come up on the second to last day of trial. It's scheduled to be the second to last day of trial, and you're faced with a brand new opinion that wasn't disclosed. Do you want to go any further? Good question. It's trial strategy. But do you want to have him come up with a second or a third opinion that he's never discussed before? No. This should have been and always should have been disclosed in advance. It would have been so easy to disclose it. It would have been so easy to cross-examine the witness about it. But there was no opportunity to prepare. Counsel, I think in its order the district court judge, in a footnote, said that neither party objected to expert testimony beyond the scope of the disclosures and the reports. What do you make of that? I objected to it a few pages later. Afterward I said I was shocked, basically shocked by the disclosure of this previously undisclosed testimony. I was shocked and I moved to strike very shortly thereafter. So you're saying you did object? Well, I moved to strike. I did not say objection. I may have said objection actually, but I moved to strike. But it was a page or two later after I recovered from looking through the letter, the 20-page letter, and making sure that I hadn't missed anything. What remedy are you seeking? Pardon me? Sorry. What remedy are you seeking? This is a jury way of trial. I'm seeking a new trial before a different judge, Your Honor. Well, wouldn't the remedy be to send it back and either have that stricken from the record and then see what the judge decides based on that or give you the choice of responding to it and then see what the judge says? That's one of the benefits of not having a jury trial is we still have the fact finder who can respond. I think I give the judge great deference and he's a very good man and he's very fair, but I think it would not be fair to go before the same judge. Thank you. Thank you, Mr. Smith. At this time, Mr. Fitzgerald. Mr. Smith, you can stay at the same table. Good morning, Your Honors. Michael Fitzgerald for the defendant, I believe, the United States Department of Veterans Affairs. Judge Thompson, I think you're right. You could affirm the judgment based on harmlessness error inquiry, but I would like to start at step one. As Your Honor pointed out, Judge Cayetta, the threshold issue is whether there was a Rule 26 violation at all or whether this was just reasonable elaboration of what was already in the expert report. And on that score, I think it's important to first clarify just the nature of what Dr. Weinstein's challenge testimony actually was because he never used the phrase migration theory. He didn't testify that a suture can untie itself and then self-propel itself across the body. His testimony was just that a suture could move by virtue of attaching to an artery and then detaching because of, say, a deteriorated artery, or the suture could move by virtue of simply not securing to the artery at all in the first instance. And the notion that the suture could move was not surprising or odd testimony for at least two fundamental interrelated reasons. First, it was clearly defendant's position before and during trial that the doctors properly deployed the suture to the artery. Plaintiff obviously disagreed with that position, but it was defendant's view that the doctors committed no negligence here. It would have been odd to go to trial on that issue if the defendant's view were something else. Second... What do you mean deployed? So the deployment of the suture would be the use of the medical device, and it would include sending the stitch down through the device to the artery and suturing it. So when the doctors referred to deploying the suture, the deployment of the suture, it's referring to the process of suturing as a whole from start to finish. It's not just the moment when the doctor pulls the trigger on the medical device. And so it was clearly defendant's position that the doctors deployed the suture properly, and that's what the district referred to. So the defendant's theory was the doctor deployed it in the right place, the artery, not the rectus muscle, and then it failed. That's correct, in the sense that it failed to latch on, actually suture, to the artery. I mean, that point was undisputed. It would have to be undisputed. The suture, there was no dispute the suture was found in the muscle and not sealed onto the artery. And was it sutured in the muscle? No. Well, Your Honor, there wasn't testimony as to whether it was or not, but the relevant medical report, this is at page 47 of the addendum, the emergency surgery doctor, Dr. Gupta, simply noted that he found it in the muscle. And then at trial there was no testimony from Dr. Gupta or any other doctor that it was found stitched into the muscle. But the fundamental point being it was defendant's position that there was no negligence. It was deployed properly. In other words, the operators couldn't have done anything differently. They followed all the correct steps, which includes positioning it and aiming it correctly. It's just that the suture failed to actually attach to the artery. So that was point one that was clearly undisputed. The second point I make is that it was also clear, both parties agreed, that the suture was found in the muscle. There was no dispute about that. And so, in other words, plaintiff clearly knew defendant's position was that the doctors deployed the suture properly to the artery, but nonetheless it ended up in the muscle. And so it's a little difficult to understand how plaintiff could have reasonably been surprised to hear Dr. Weinstein testify that this was the result of movement, that this was the result of the suture going from point A to point B. But he gave, he testified as to how that could occur. He gave two examples of how it could occur. That's correct. And obviously nobody knows how exactly it would have occurred in this case. But that seems, the rule requires the disclosure not only of his opinion, but of the reasons that support the opinion. So his opinion is that what was disclosed was simply that the fact that the device was found in the rectus muscle doesn't mean there's negligence. That's correct, Your Honor. And it's undisputed that it was found there, so it seems the crucial point in the trial was one side is saying that doesn't mean it's negligence. The other side is saying there's no way it could have got there unless they put it in the wrong place. Well, it becomes pretty significant then as to establish that there indeed was a mechanism by which it could go from A to B, from the artery to the rectus muscle. Because unless there was such a mechanism, you lose. So I'd say a couple things. I'm just getting it. It seems the type of thing that pretty clearly should be disclosed under the rule so that the other side has a chance to prepare for and respond to it. I'd respectfully disagree with that for a couple of reasons, Judge Cata, and I think it would help to just pull apart the notion of movement, whether or not that can occur, and the reasons for that movement. And so as Judge Thompson pointed out, the expert clearly disclosed in his report his view that the fact that the suture was found in the muscle did not imply negligence. But that could mean simply because it's hard to get it in the right place and you could non-negligently deploy it to the muscle. That would be consistent with what he's saying. Another version is what he's saying is it could have got there, it could have migrated there even though you put it in the right place. I don't think so, Your Honor, because as Dr. O'Meara had testified to this as well, part of correctly deploying the suture, one of the necessary steps, is positioning and aiming it correctly. There's actually a step when you use the device that shows that you have it in the artery because there's actually pulsatile blood flowing back into the device. And so to opine that the device was utilized properly, the suture was deployed properly, it necessarily entails it was positioned correctly. So I think the necessary upshot of saying that the location of the suture in the muscle did not imply negligence would be that it moved, either by virtue of attaching and detaching or not attaching at all. The second point, so in the sense that the challenge is to this notion of movement, I think that is directly a reasonable elaboration, if not a necessary upshot of what was in the expert report. The report didn't even say there was movement. That's right. So they've added the opinion that there's movement and then they've added to support the conclusion that there was movement and then two mechanisms by which the movement could occur, filling in two holes in the report. I guess my response to that, Judge Kayeda, is that the second component, the reasons for the movement, that wouldn't be the challenge or surprising portion of the testimony, at least as argued by the plaintiff. It's really that threshold question of was there movement. I think they're arguing both. Well, Your Honor, I think the plaintiff's argument is that the testimony that the suture had moved, that in and of itself was a surprise. That was the key testimony that Dr. Weinstein... I think they moved to strike the whole thing, that it could move and that there were ways in which it could move. Sure, but I guess another way to think about this, Judge Kayeda, is that the district court didn't rely not only on the fact that it moved, but it didn't make any kind of finding as to the reasons for that movement. So if you were to shift to step two and look at the harmlessness inquiry, the district court clearly said in its opinion that it found no negligence in the deployment of the suture, even though the suture did not permanently attach to the artery, if at all. So the court must have found it migrated. In the sense that it, regardless of whether it attached at all. So I take plaintiff's challenge to be here that, as explained in Ms. Duvall's briefs, that the allegedly surprising nature of Dr. Weinstein's testimony was the notion that it could attach and detach. And the district court expressly said, I'm finding no negligence regardless of if that happened or if it didn't attach at all. And that second component, that was clearly not a surprise. Plaintiff's own expert testified that if the suture doesn't attach at all in the first instance, of course it could be displaced to a different location. And I think it's that nature of the testimony which was a reasonable elaboration of the expert report. You're right that the words movement, that notion of movement, isn't in Dr. Weinstein's written report. But as Judge Howard's opinion for the court in Gay made clear, that's not the relevant inquiry here. The relevant inquiry is not whether it was in the report, but just whether it was a reasonable elaboration of the report. I'd say a couple of points. So the failure rate, the court talked about the failure rate. What accounts for the failure rate? What makes it have that rate of failure? So I understand failure rate to mean that sometimes, regardless of if the device is positioned properly and aimed properly, once it's deployed, it can nonetheless sometimes fail to actually seal on completely to the artery. I think that could be a result of the anatomy of the patient, the nature of the arteries. It's basically things independent of the operation of the device, and even though the device itself is not defective, nonetheless it can sometimes fail to accomplish its intended function. Judge Katta, if I could just make one last point on the harmlessness error inquiry. Briefly. I would just emphasize that Dr. Weinstein also testified, and this is not a challenge portion of his testimony, that in his view the suture was not deployed directly into the muscle. Dr. O'Meary made the same point as well, and that's really just the mirror image of saying that the suture moved. And so in that sense, as Jaron's pointed out, the district court could have relied on that alternative basis and that would be sufficient for affirmance here. Judge Howard, do you have any questions? I do. There's a footnote in the opinion where the trial judge says that nobody objected on the grounds that testimony was unanticipated or not previously disclosed. When I look at the record, though, before this witness was done testifying, the plaintiff brought this issue to the judge's attention and specifically objected for lack of proper disclosure. So isn't that footnote just plainly wrong? That aspect. With respect to the district court, I think Your Honor is right that that was incorrect, but I think the more fundamental point being that the district court didn't rely on that nature of the testimony. It probably would have said so if it had. And how do we know it didn't rely on that testimony? Why else would the court, in other words, when there's testimony and the court is not going to rely on it, I would think it would say I'm not going to rely on it. When it instead says nobody objected to it, that kind of implies the court's relying on it. Otherwise, why mention that it wasn't objected? I don't think so, Your Honor, for two reasons. The first one is that in that same footnote, the district court says, Dr. Mercuro, plaintiff's expert, testified this, no migration. Dr. Weinstein testified this, sometimes migration. And it would have been odd for him to raise that dueling testimony and not say this is the one I'm crediting. I think he just says he considered it all. But then the second point is he goes on to say what he credits is Dr. Elmeri's testimony that the correct steps were followed. And so the thrust of plaintiff's argument, I think, here is that there was some kind of conflict between Dr. Elmeri's testimony and Dr. Weinstein's testimony. And the only way we could have lost is if the district court disavowed Dr. Elmeri's testimony and instead credited Dr. Weinstein's testimony. But the district court's opinion expressly said, when it comes to the deployment of the suture, I find Dr. Elmeri's testimony, I credit Dr. Elmeri's testimony. And so this court doesn't even need to parse the meaning of the testimony because that would necessarily mean the admission of Dr. Weinstein's testimony was necessarily harmless error because the district court relied on what Dr. Elmeri said about what the doctors did and not about what happened afterwards. Thank you. Mr. Smith, I believe you reserved some time. Mr. Smith, please introduce yourself back on the record to begin your one-minute rebuttal. Yes, thank you. My name is Clinton Smith, Traver Clinton Smith, Jr. for the Appellant. I just, after hearing what I just heard, I just want to reiterate to the court that the defendant, the doctor who performed the operation testified twice, not once, but twice unequivocally and never resurrected or never cured that he and the other doctor put the suture in the wrong place. Thank you. That concludes argument in this case.